This was an ejectment for four-sevenths of a large tract of land *Page 343 
in Sussex county, originally devised by John Tingle to his two children, John and Mary, in fee. John Tingle, jun., died intestate and without issue, and his half descended to his sister. Mary Tingle married (first) Woolsey Burton and had by him four children, the plaintiffs' lessees; and (afterwards) Andrew M'Crea, by whom she had three children, under whom the defendants were in possession. The defendants had been in the exclusive possession of the property for many years, claiming under Andrew M'Crea., who it was alledged died seized in fee by virtue of a conveyance from him and his wife Mary, to Capt. Nathaniel Tingle, and a reconveyance from Tingle to him. The deed from Nathaniel Tingle to Andrew M'Crea was on record, and bore date in 1825; but there was no record of a deed from M'Crea and wife to Tingle, and that deed, if it ever existed, was lost.
On empannelling the jury one of them was challenged, because his wife was the second cousin to both parties. The court overruled the challenge, on the ground that if the juror was "of kin" to either party, he was equally near to the other; and thus indifferent. Another juror was challenged who was a cousin to one of the parties, and the challenge was allowed. Also another juror whose wife was a cousin to one of the parties, was not allowed to be sworn. Another juror was challenged because he was a cousin to a party in interest, though not a party on the record, but who was really a party in the cause and took defence. The challenge was allowed.
After the plaintiffs had closed, the defendants' counsel moved a nonsuit, because there had been no proof of an actual ouster, which was necessary, as between coparceners, as these parties were, according to the plaintiffs' show. They cited Adams on Eject.
55; 2 Stark. Evid. 508, 1 Chitty's Pl. 176.
The plaintiffs' counsel did not deny that under a proper form of pleading they might be required to prove ouster as between tenants in common; but they argued that under the consent rule, the defendants confess the ouster as much as lease and entry, unless they had applied for a special consent rule allowing them to defend on the confession of lease and entry only. (2 Law Lib. 5, Blanshard on Lim.
5; 3 Burr. Rep. 1895-6-7; 1 Sound. PL Evid. 456;Adams on Ejectment 276.)
Cullen and Ridgely replied, that the consent rule was mere form, and was always entered by the clerk without any application or consent of parties. What is its effect? Not any thing of consequence. *Page 344 
It is only a part of the forms upon which the action of ejectment is founded. The confession is between nominal parties — John Doe and Richard Roe — and cannot operate to the prejudice of either party, nor supply or dispense with any proof requisite in the cause. The plaintiff's must show that defendants are trespassers. Having shown that they are coparceners with us, they cannot recover without proof of an actual ouster. (13 East 210; 1 Saund. Pl. Ev. 526; 2 Leigh N. P. 908.)
The Court. — The text of Leigh's Nisi Prius is a misprint, as appears from 2 Taunt. 397. The effect of the common consent rule is to confess lease entry and ouster, in cases even where an actual ouster is necessary, unless the defendant on motion obtains leave to enter into a special and restricted consent rule. This would be granted wherever the proof of ouster is material, and it is equally proper that the other side should have notice that this proof will be required. The notice ought to come from the defendant, as it would upon his application to be allowed to take defence on confession of lease and entry only. If he make no such application, but enter into the common rule to confess lease, entry and ouster at the trial, it will bind him even where actual ouster is necessary as between the parties. The consent rule now extends in England to a confession of the possession as well as of lease, entry and ouster; and this would be a good modification of our rule. There is no reason why a party who is in possession and defends, should not be required to admit himself in the possession at the time of suit brought. But our rule does not at present extend to this.
 Nonsuit refused.
The defendants now with a view to open the proof of the existence and loss of a deed for the land in dispute from Andrew M'Crea and Mary his wife to Capt. Nat. Tingle, called witnesses who proved that M'Crea survived his wife Mary, and married again and died, leaving his second wife surviving: that Stephen Hill and the widow administered on his estate: that Hill was now dead: that search had been made amongst Hill's papers for the deed, without effect: that the most of M'Crea's papers went into Hill's hands, and that search had been made among those that were left with the widow, and the deed had not been found.
Parol proof of the existence of the deed was now offered, and objected to on the ground that sufficient proof had not been made of *Page 345 
search for the lost paper. It was insisted that Mrs. M'Crea should have been: called.
The Court. — Supposing this deed to have been in Andrew M'Crea's possession at his death, where did it go? The legal custody of the title papers would be in the heir; but in the usual course of things here the administrator takes possession of all papers, though he is not entitled to retain the title papers as against the heir. The papers of M'Crea went into the hands of his administrators, Mrs. M'Crea and Hill. Hill took the most of them off according to the proof, and proper search has been made among these. Neither is the residue unaccounted for. Those which were left with the widow M'Crea were examined, and the deed is not to be found there. The paper has not been traced to her hands in fact, nor does the law place it in that custody. On the contrary, the papers of Andrew M'Crea generally have been traced to other custody, where proper search has been made. There is, therefore, no necessity of calling Mrs. M'Crea. We think the evidence sufficient to admit parol proof of the existence, loss and contents of this deed.
The allegation on the part of defendants was, that this deed was executed and acknowledged before two justices of the peace, Nathaniel Hill and John W. Dingle. The effect of the deed, if proved, would, together with the deed from Nathaniel Tingle to M'Crea, make the lands in question descendible to Mrs. M'Crea's last three children instead of all her children, the Burtons as well as the M'Creas. Justice Nathaniel Hill was dead and John W. Dingle, Esq., the other magistrate, before whom this deed was said to have been acknowledged, was now called to the stand, and objected to for want of competent mental capacity to be a witness. Several witnesses were examined in reference to Mr. Dingle's sanity, among whom were two physicians, the one his brother and the other his nephew.
By the Court:
It is a principle of law that every man is supposed to be sane until the contrary be shown, and the testimony of this witness is competent unless he is proved to be insane. But this presumption changes with the proof of insanity. General insanity being proved, as has been done in this case, the presumption is that it continues, and it rests on the party offering the witness, to show us that he has been so far restored to sanity as that he may be heard as a witness with any reliance upon his memory and judgment. *Page 346 
We think they have failed to do this. On the contrary, there exists strong evidence of delusion existing in the mind of this witness down to a very recent period, and to such an extent as to exclude the idea of his sanity. The opinions of medical men are entitled to peculiar weight on this subject, especially if they have had good means of observation, as is the case with the brother and nephew of this witness, who are very clear in their testimony as to his insanity. Though with much reluctance we feel constrained to exclude the witness as a man upon whose testimony no reliance whatever can be safely placed for want of mental capacity.
 The plaintiffs finally had a verdict.